**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, a corporation established pursuant to 12 U.S.C. § 1716 *et seq*, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:26-cv-01585 |
| v. | ) ) | Hon. Paul L. Maloney |
| TWIN PINES MHC - MICHIGAN, LLC, a Michigan limited liability company, | ) ) ) | |
| Defendant. | ) ) ) | |

## <u>ORDER APPOINTING RECEIVER AND OTHER RELIEF</u>

Plaintiff Federal National Mortgage Association, a corporation established pursuant to 12 U.S.C. § 1716 *et seq*. ("<u>Fannie Mae</u>"), filed a Verified Complaint (the "<u>Complaint</u>"), and Motion for Appointment of Receiver and for Preliminary Relief (the "<u>Motion</u>"), seeking the appointment of a receiver over certain real property located in Albion, Calhoun County, Michigan more fully described below. This

Court having reviewed Fannie Mae's Complaint and Motion, and being fully advised in the premises, hereby appoints a receiver and imposes ancillary relief to assist the receiver as follows:

## FINDINGS

This Court finds that there is good cause to appoint a receiver in this action in order to protect the parties' respective interests in the Receivership Property (as such term is defined below) and income therefrom.

This Court further finds that the proposed Receiver (as defined below) has sufficient competence, qualifications and experience to administer the Receivership Property (as defined below).

## APPOINTMENT OF RECEIVER

1. Fannie Mae's Motion is GRANTED.

2. This Court hereby takes exclusive jurisdiction over the Receivership Property (as defined below), and appoints Mark S. Kassab of M. Shapiro Real Estate Group (the "Receiver"), as the Receiver in this matter with exclusive control over the "Receivership Property," which means:

    a.    The real property and manufactured home community located at 2701 30 Mile Road, Albion, Michigan 49224, on which Fannie Mae holds a Mortgage and which is more fully described in the Mortgage, a copy of which are attached to Fannie Mae's Complaint in this matter and incorporated by reference, together with all buildings, structures, and improvements on the Receivership Property;

b.  All fixtures of every kind or nature located in or upon or attached to, or used or intended to be used in connection with, the operation of the Receivership Property;

c.  All of the collateral and assets of Twin Pines MHC – Michigan, LLC ("Borrower"), as described in the Mortgage attached to Fannie Mae's Complaint including, but not limited to, all machinery, apparatus and equipment, materials, supplies, articles of personal property used in connection with or with the operation of the Receivership Property, all Borrower-Owned Homes, all UCC Collateral (as defined in the Mortgage);

d.  All of the cash, rent, royalties, issues, revenues, income, profits, insurance proceeds and other benefits, including tax appeal refunds, of the Receivership Property and the facilities thereon as more particularly described in the Mortgage filed with the Complaint, under present or future contracts, occupancy agreements, agreements for reimbursement, or otherwise, together with all accounts due or to become due as income in connection with the operations of the Receivership Property ("Rents") all as more fully described in the Mortgage and Loan Documents attached to Fannie Mae's Complaint, as defined therein;

e.  All permits, licenses and other contracts pertaining to the Receivership Property and the operations of the Receivership Property;

f.  All books, records, accounts or documents which in any way relate to the Receivership Property, the Rents, or the operations of the Receivership Property, and copies of all documents Borrower is legally obligated to retain;

g.  All other property, estate, right, title and interest as described in the Mortgage and the other Loan Documents attached to and referred to in Fannie Mae's Complaint; and

h.  All bank accounts maintained by Borrower or other defendants concerning the Receivership Property, including any operating accounts, escrow accounts, insurance-proceeds accounts, cash management accounts, and/or security deposit accounts.

3. The Receiver will manage the day-to-day operations of the Receivership Property.

4. Borrower and its officers, directors, employees, partners, trustees, agents, representatives and/or any entity controlled by Borrower or any other defendant are directed to cooperate with the Receiver in the transition of the management of the Receivership Property and shall make immediately available to the Receiver the paper and electronic records required by this Order, provided that Borrower may retain copies, including, but not limited to, all:

    a. Leases including communication/correspondence files and any insurance certificates;

    b. A current rent-roll as well as tenant contact names, email addresses and telephone numbers;

    c. A current aged accounts receivable/delinquency report;

    d. The occupant ledgers;

    e. Documents identifying and summarizing all pending litigation;

    f. All operating licenses;

    g. Documents pertaining to all pending new leases/renewals;

    h. All existing service contracts;

    i. All pending bids for contractor work;

    j. Copies of all on-site employee payroll records and employee files and applications to include number of employees on health or dental programs by coverage (single, single plus, or family coverage), gender and age of each employee;

k.   All documents, books, records and computer files and records concerning the rents, profits, finances, issues, and operation and management of the Receivership Property, including, but not limited to, accounts with any financial institutions;

l.   Such other records pertaining to the management of the Receivership Property as may be reasonably requested by the Receiver;

m.   All keys, access keys, cards, codes and passwords;

n.   All security deposits, security deposit accounts and an accounting for all security deposits;

o.   A list of all utilities and utility accounts;

p.   All insurance policies for the Receivership Property and all documents related to any claim made under said policies;

q.   Correspondence relating in any way to the Receivership Property;

r.   Surveys, site plans, specifications, floor plans, drawings, measurements, etc.;

s.   Documents identifying and summarizing existing litigation (excluding this action);

t.   All documents, books, records and computer files, computer equipment, software, management files, equipment, furniture, appliances, vending machines, supplies of Borrower, websites, social medial accounts (including but not limited to Facebook, Twitter, or Instagram), other online accounts, online services, financial institution accounts, petty cash fund, and email accounts, and all passwords needed to access all software, websites, email accounts, social media and other online accounts, and computer files, e-mail accounts maintained at the on-site management office(s) (and all off–site financial records) of Borrower including the office at the site including, but not limited to, all records concerning all Receivership Property income and revenue and the operation and management of the Receivership Property, including but not limited to access

information, if any, to operate the systems of the Receivership Property (*i.e.*, security system, communication systems, HVAC control systems, etc.).  To the extent that any of the foregoing computer files, software and/or information is maintained at an off-site location, or on a computer system not owned by Borrower, or is otherwise stored in a manner that the Receiver cannot have unrestricted access, based on security or confidentiality concerns of Borrower and any related entity, relating to non-Borrower property, information, software or licensing limitations, Borrower shall provide an accurate list of all such information which is maintained in off-site locations, or on a computer system not owned by Borrower, or otherwise in a form or manner that cannot be made completely available to the Receiver.  To the extent that any of the software utilized by Borrower or by other defendants or related entities on behalf of Borrower or pertaining to the Receivership Property cannot be used by the Receiver, Borrower and other defendants shall take all action reasonably necessary to extract data requested by the Receiver from the applicable software programs and make copies of such information available to the Receiver;

u.  All information relating to tax appeals including files, attorney retainer agreements and pleadings; and

v.  Borrower's EIN.

5.  The release of employee payroll records and files, described in Paragraph 4(j) above, to the Receiver is authorized by this Order.

6.  Upon entry of this Order and acceptance by the Receiver of the receivership, the Receiver has the authority to operate the Receivership Property as set forth under this Order and as provided in MCL § 554.1011 *et seq*. and MCL § 554.1051 *et seq*.

7.  Within three business days following the entry of this Order, Defendant shall provide the Receiver with copies of all existing insurance policies for the

6

Property, the assets of the Receivership estate, or maintained by Defendant for or with respect to the Property. The Receiver, the retained professional property manager, FHFA, and the Plaintiff shall each be named as an additional insured or as mortgagee, as their interest may appear on all existing coverages, including property damage, and general liability policies for the Property (collectively referred to as "Insurance on Property"). The premiums for insurance policies and deductibles for Insurance on Property that become due shall be expenses of the Receivership estate. The Receiver shall have the right to possess and control all right, title, and interest of Defendant or the insured in and to all proceeds from any claims made or to be made under any insurance policy maintained by Defendant, the Receiver, or any other party with respect to the Property of the Receivership estate. Except as restricted by this paragraph below, the Receiver shall have the right to modify, amend, or replace any Insurance on the Property or obtain additional insurance as the Receiver deems reasonably necessary to protect the Property. No existing insurer may cancel its existing policy as a result of the appointment of the Receiver without consent from the Plaintiff and/or FHFA. The Defendant may not amend, modify, or cancel any existing insurance policy without the written consent of the Receiver, Plaintiff and/or FHFA. Furthermore, the Receiver is required to obtain written consent from the Plaintiff prior to any such amendment, modification or cancellation of any existing insurance policy.

8. Separate from Insurance on Property as set forth in Paragraph 7 above, the Receiver shall, at its sole cost and expense, obtain and carry in full force and effect for Receiver and its employees (collectively "Receiver") insurance coverages for (1) professional liability/errors and omissions and, (2) fidelity/crime. Such professional liability/errors and omissions coverage will have a minimum per claim coverage amount of $5 million and fidelity/crime coverage will have a minimum per claim coverage amount equal to the greater of $1 million per claim or four months of revenue using the agreed budget for the property (collectively these coverages are referred to as "Receiver's Business Insurance"). To the extent the Receiver engages agents, attorneys, or contractors to provide services, those entities must also have appropriate coverages for the services to be performed as determined by the Receiver. Fannie Mae and FHFA shall be named as additional insureds on the Receiver's Business Insurance. Each insurance carrier providing Receiver's Business Insurance, whether admitted or non-admitted, must comply with a minimum (1) A.M. Best Financial Strength Rating of A- and (2) A.M. Best Financial Size Category of VII or better. The maximum deductible or self-insured retention or any combination thereof for each coverage shall be no more than $25,000. The premiums for insurance policies and deductibles for all Receiver's Business Insurance shall not be expenses of the Receivership estate. The Receiver will, upon appointment, provide certificates to Fannie Mae evidencing insurance coverages,

8

and thereafter, upon Fannie Mae's request. The Receiver will promptly notify Fannie Mae of any material change in insurance coverages.

9. Any liability incurred by, or recourse against, the Receiver other than for gross negligence, willful misconduct, malfeasance, bad faith, reckless disregard of duties, or actions in violation of orders of this Court, will be limited in order of priority first to applicable insurance coverages inuring to the Property and to the Receiver (including its employees, agents, attorneys, other professional, or contractors), second to the Receiver Bond, and third to the Property Funds generated by the Property and received by Receiver in the course of the Receivership. Any claims or actions asserting liability against the Receiver, or the Receiver's agents, employees, attorneys, other professionals, and contractors shall be brought by motion in this action. For the avoidance of doubt, the Receiver, and the agents, employees, attorneys, and contractors of Receiver shall have personal liability for gross negligence, willful misconduct, malfeasance, bad faith, reckless disregard of duties, and actions in violation of this Court's orders.

10. That for the avoidance of doubt, the Receiver, and the agents, employees, attorneys, and contractors of Receiver will have personal liability for gross negligence, willful misconduct, malfeasance, bad faith, reckless disregard of duties, and actions in violation of this Court's orders.

11.     The Receiver is authorized to initiate, defend, negotiate, settle, or otherwise dispose of any claim or litigation that concerns the Property or the Receivership Estate subject to Fannie Mae's approval to the extent such settlement shall affect Fannie Mae's security interests in the Property and all related Fannie Mae interests thereto.

12.     The Receiver shall be vested with all the powers and responsibilities of a receiver as provided in this Order, subject to the rights, titles, powers, privileges, and functions of the Federal Housing Finance Agency ("FHFA") under the Housing and Economic Recovery Act of 2008 ("HERA"). FHFA retains all its federal powers and functions including the right to assert such powers and protections to preclude the Receiver and the receivership from restraining or affecting the Conservator powers or functions as to Plaintiff's interests at issue herein.

13.     Notwithstanding any other term of this Order, Fannie Mae and FHFA, as Conservator of Fannie Mae, retain and may exercise without further Court approval any and all of their rights under the Loan Documents and HERA. The Receiver's powers as set forth in this Order do not in any way diminish Fannie Mae's rights under the Loan Documents or FHFA's rights, powers, and functions as Fannie Mae's Conservator and successor under HERA.

14.     The Receiver must obtain Fannie Mae and FHFA approvals prior to seeking court approval to assert any Receiver's certificates or liens.

15. Any and all Receiver's certificates or Receiver's liens shall be subordinate to any interests of Fannie Mae under the Loan Documents.

16. That nothing in this Order is intended to interfere with, or adversely affect, any trustee's sale or other exercise of Plaintiff's or FHFA's rights, nor is the Order intended to constitute a waiver of, or election not to proceed with, any commissioner's sale.

## **RESTRAINT OF ACTIONS BY THIRD PARTIES**

17. Borrower, the other defendants, and all persons, other than the Receiver or those acting in furtherance of a direction from the Receiver, who receive actual notice of this Order by personal service or otherwise are hereby restrained and enjoined from:

a. Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of the Receivership Property, including cancelling, reducing, or modifying any insurance policies;

b. Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities that constitute Receivership Property without providing the Receiver prior notice and an opportunity to inspect the contents in order to determine that they contain no assets or documents of the Receivership Property;

c. Cashing any checks or depositing any payments from tenants or clients of Borrower, which are Receivership Property;

d. Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any of the Receivership Property; and

e. With respect to the Receivership Property, doing any act that would (and in the case of Borrower, the other defendants, or past and present officers, directors, members, and employees of Borrower, failing to do any act in response to a valid request of the Receiver, which failure would), interfere with the Receiver's taking custody, control, possession, or management of the Receivership Property; would harass or interfere with the Receiver in any way; would interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Property; or would constitute a refusal to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court.

18.    Any financial institution, business entity, and/or person maintaining or having custody or control of any of the Receivership Property which is served with a copy of this Order, or otherwise has actual or constructive knowledge of this Order, shall:

a. Hold and retain within its control, and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of any of the Receivership Property except in favor of the Receiver;

b. To the extent not in the possession of Borrower or the other defendants, provide the Receiver an immediate statement setting forth:

i. The identification number of each account or asset titled in the name, individually or jointly, of Borrower or the other defendants (or any of them) pertaining to, held on behalf of, or for the benefit of Borrower, including all trust accounts managed on behalf of Borrower, or the other defendants (or any of them) otherwise pertaining to, held on behalf of or for the benefit of Borrower;

ii. The balance of each such account, or a description of the nature and value of such asset;

iii. The identification and location of any safe deposit box, commercial mailbox, or storage facility that is either titled in the name, individually or jointly, of Borrower, or the other defendants pertaining to, held on behalf of or for the benefit of Borrower, whether in whole or in part; and

iv. If the account, safe deposit box, storage facility or other asset has been closed or removed, the date closed or removed and the balance on said date.

c. To the extent not in the possession of Borrower, or the other defendants and turned over or made available to the Receiver in accordance with this Order, provide the Receiver with copies of all records or other documentation pertaining to each such account or asset, including, but not limited to, originals or copies of account applications, account statements, corporate resolutions, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; and

d. Immediately honor any reasonable request or direction by the Receiver with regard to transfers of assets and/or documents of the Receivership Property.

19. Borrower, the other defendants, and any third parties receiving notice of this Order shall also immediately surrender to the Receiver all monies that they currently or later possess (and/or that is or becomes subject to their control) which to their actual knowledge constitutes revenue, profits, Rents and/or income collected from the operation of the Receivership Property from and after July 3, 2025, including any money held in accounts maintained by Borrower at any financial institution that has originated from the Receivership Property, subject to the provisions of paragraph 2h, above. All financial institutions, other than Fannie Mae

or any servicer of the loans at issue, with any money on deposit belonging to or arising from the operation of the Receivership Property are directed to deliver such deposits to the Receiver and such records as the Receiver may reasonably request with respect to such accounts.

## STAY OF ACTIONS

20. Except for the above-captioned case and by leave of this Court, and except with respect to Fannie Mae's right to foreclose its Mortgage on the Receivership Property, during the pendency of the receivership, Borrower, any other defendants, and all other persons, creditors and entities including but not limited to tenants and others in privity of contract with Borrower, or the other defendants, (other than Fannie Mae) are hereby stayed from taking any action that affects the Receivership Property in any manner, including any action or lawsuit to establish or enforce any claim, right or interest either for, against, on behalf of, or in the name of Borrower, the other defendants (solely pertaining to the Receivership Property), the Receiver, Receivership Property, or the Receiver's duly authorized agent acting in their capacities as such, including but not limited to, the following actions:

    a. Commencing, prosecuting, litigating or enforcing suit that relates in any way to or affects Borrower, any other defendants, or the Receivership Property or contracts that affect the Receivership Property, except that actions may be filed to toll any applicable statute of limitations;

    b. Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to

14

take possession of, or retaining possession of, property of Borrower, or any other defendants that relates in any way to the Receivership Property, or attempting to foreclose, forfeit, alter or terminate any of Borrower or any other defendants' interest in the Receivership Property, whether such acts are part of a judicial proceeding or otherwise;

c. Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon the Receivership Property; and

d. Doing any act or thing to interfere with the Receiver taking control, possession or management of the Receivership Property, or to in any way interfere with the Receiver or the duties of the Receiver, or to interfere with the exclusive jurisdiction of this Court over the Receivership Property.

21. This Order does not prevent the parties from commencing litigation that does not relate to the Receivership Property, including litigation related to any guaranty claims. This paragraph does not stay the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## **POWERS AND DUTIES OF RECEIVER**

22. Immediately upon entry of this Order and continuing until expiration or termination of the receivership, the Receiver is authorized to take any and all actions the Receiver deems reasonable and appropriate to take possession of, to exercise full control over, and to prevent waste and to preserve, manage, maintain, secure, and safeguard the Receivership Property, including, but not limited to, all cash on hand,

bank accounts, credit card receipts and other credit and charge card documents, bank deposits, utility deposits, contract deposits, other cash collateral, payment and performance bonds, as well as all Receivership Property, and take such other actions as may be necessary and appropriate to take possession, to exercise full control, to prevent waste and to preserve, secure and safeguard the Receivership Property, including taking possession of and copying, if necessary: all books, records, notes, memoranda, loan documents, deeds, bills of sale, canceled checks, check ledgers, calendar notes, diary notes, notes, records, ledgers, electronically stored data, tape recordings, computer discs, or any other financial documents or financial information in whatever form belonging to Borrower or the other defendants that relate in any way to Borrower's business practices or finances relating to the Receivership Property. Without limiting the generality of the foregoing, the Receiver shall:

a. Take all action determined by the Receiver to be necessary or appropriate to safeguard and preserve all tangible and intangible assets of the Receivership Property and all licenses used in connection with the operation of the Receivership Property, including, but not limited to, obtaining insurance in such amounts and with such companies as to insure against such risks as the Receiver deems necessary or desirable;

b. Collect all revenues, profits, income, Rents, and issues from the Receivership Property;

c. Allow Fannie Mae and its counsel access to the Receivership Property at reasonable times to inspect the Receivership Property and all books and records thereof;

d.  Collect any unpaid or delinquent rents, revenues, issues, profits and other uncollected receivables pertaining to the Receivership Property, including, but not limited to, any and all recoveries, awards, and other payments in connection with any litigation with respect to the Receivership Property, regardless of when accrued, and to initiate, prosecute, defend, compromise, adjust, intervene in, or become party to such actions or proceedings in state or federal court as may, in its opinion and discretion, be necessary or proper for the protection, maintenance, or preservation of the Receivership Property or carrying out the terms of this Order, including eviction proceedings;

e.  Enforce, terminate, or approve any contracts and/or agreements regarding the Receivership Property, subject to Fannie Mae's approval; provided, however, no such approval is required for the termination of residential leases in the ordinary course of business;

f.  Accept or reject executory contracts;

g.  Retain, hire, or discharge on-site employees; provided, however, if requested by Receiver, Borrower or its property manager shall terminate any and all employees of the Receivership Property and such termination shall be in compliance with any applicable federal, state or local statutes and regulations including those governing mass layoffs; to the extent the Receiver decides to hire any of the dismissed employees, agents, or other personnel with respect to the Receivership Property, neither the Receiver nor the receivership estate shall be liable for any claims of such employees, agents, or other personnel that arose prior to the date and time of the entry of this Order. Borrower or any management companies engaged by Borrower (as appropriate) will be solely and exclusively responsible for (i) any claims or liabilities that arose prior to the appointment of Receiver that are in any way related to an employee's employment with or separation from Borrower or any management companies engaged by Borrower, including any compensation, benefits, accrued vacation, payroll taxes, workers compensation insurance, severance liabilities, contractual obligations, or benefit plans, and (ii) liabilities existing prior to Receiver's appointment related to the Worker Adjustment and Retraining Notification Act (WARN), 29 U.S.C.

§ 2101, *et seq.*, and liabilities existing prior to Receiver's appointment related to the Consolidated Omnibus Budget Reconciliation Act (COBRA), or similar state statutes or regulations.

h.   Establish pay rates of on-site employees and to pay all withholding taxes regarding such employees that accrued after the entry of this Order;

i.   Manage, maintain and operate the Receivership Property, including without limitation, the payment from funds received as Receiver of all of the following (collectively the "<u>Operating Expenses</u>"):  (i) all ordinary and necessary operating expenses arising from the operation by the Receiver of the Receivership Property for the period after entry of this Order until expiration or termination of the receivership; (ii) all current real and personal property taxes and assessments (and delinquent taxes, with the prior written consent of Fannie Mae); and (iii) all premiums of hazard, liability and other insurance policies upon the Receivership Property for the term of the receivership;

j.   Subject to approval by Fannie Mae, market the Receivership Property for sale through a related entity, provided, however, that in the event that the Receiver seeks to enter into any purchase agreements for the sale of the Receivership Property and/or seeks to sell such property, the Receiver must seek and obtain approval from Fannie Mae and this Court;

k.   Access any accounts maintained by Borrower or any other defendant at any financial institution with funds that originated from the Receivership Property;

l.   Open new bank accounts in the name of the Receiver as necessary to carry out the obligations of the Receiver hereunder, and be added to any accounts of Borrower or other defendants relating to the Receivership Property;

m.   Endorse any and all checks that Receiver may receive which represent payment of amounts due and owing in connection with the operation of the Receivership Property that are payable to Borrower or other defendants;

n.    Retain and pay professionals including in-house or third-party attorneys and accountants, and replace attorneys and accountants, in the Receiver's discretion; and

o.    Open and review mail, including e-mail and faxes received at the Receivership Property or elsewhere directed to Borrower or its manager relating to the Receivership Property and may issue a demand that the U.S. Postal Service grant exclusive possession and control of mail, including postal boxes as may have been used by Borrower, and may direct that mail relating to the Receivership Property be re-directed to the Receiver.

23.    The Receiver shall have the power to enter into, modify, extend, terminate, and/or enforce leases and other contracts, and shall use its best efforts to charge and collect rent in connection with the Receivership Property in the ordinary course of business; provided, however, in so doing the Receiver shall not concede, settle, compromise or pay any Pre-Receivership Liabilities (as such term is defined below) without the written consent of Fannie Mae; provided, however, in the event of an emergency, Receiver may concede, settle, compromise or pay any Pre-Receivership Liabilities without the written consent of Fannie Mae, up to a cap of $5,000.

24.    Subject to Fannie Mae and FHFA's rights and powers under this Order and HERA, the Receiver is hereby vested with any and all authority necessary or appropriate, to carry out the intent and purpose of this Order, and to operate and maintain the Property and the Receivership Estate.

25. Notwithstanding anything to the contrary contained in this Order, the Receiver shall not have the authority to file a petition for relief under Title 11 United States Code (the "Bankruptcy Code") for Borrower, any other defendant, or the Receivership Property.

**PROFESSIONAL FEES**

26. The Receiver shall receive reasonable compensation for its services, payable from the funds collected from operation of the Receivership Property. The Receiver shall receive as reasonable compensation:

    a.    a monthly management fee equal to the greater of 5% of the gross revenues collected per month or $3,750 per month;

    b.    a set-up fee equal to the first full month's management fee;

    c.    a sales/leasing commission of $1,000 per transaction for each community manufactured home that is currently located on the Property that is either rented or sold to a third party and thereafter occupied, and each manufactured home unit that is not currently located on the Property that is hereafter relocated onto the Property and thereafter occupied;

    d.    travel expenses shall be billed with a direct pass through (no markup);

    e.    an hourly rate for the Receiver of $125 - 295 per hour for receivership specific activities (court filings, reports, and hearings, etc.);

    f.    a construction coordination fee of 6% of all Lender approved capital construction costs totaling $25,000 on a per project basis; and

    g.    a transition fee equal to one full month's management fees upon the sale or termination of the Receivership.

27.     The Receiver shall receive payment on a monthly basis, without further Court order, provided no objections are filed by the parties to the Receiver's monthly reports (as provided for in Paragraph 31 of this Order), within seven (7) days such reports are emailed to the parties to this action, through their respective counsel.  In the event any objections are timely filed, the Receiver or any other party may file a motion with the Court to determine the propriety of the fees sought or of the objection(s).  Such payment shall also include ordinary operating expenses Receiver shall also be reimbursed for out-of-pocket costs advanced by Receiver to the extent such costs directly relate to Receiver's duties hereunder; provided, however, that the Receiver must obtain written approval from Fannie Mae prior to incurring any single cost or expense in excess of $5,000 (that is not otherwise provided for in this Order), unless such cost or expense is deemed by Receiver to be an emergency, in which case Receiver shall promptly provide Plaintiff with notice and full explanation of such emergency cost or expense.

28.     Borrower, the other defendants, and third parties receiving notice of this Order shall cooperate with the Receiver in obtaining all insurance relating to the operation and management of the Receivership Property, including but not limited to fire, extended coverage, property damage, general and professional liability, and workers' compensation.  The Receiver and the retained management company shall be named as an additional insured on all such policies.  The Receiver shall have the

right to possess and control all of Borrower or other defendants' right, title and interest in and to all proceeds from any claims made or to be made under any insurance policy maintained by Borrower or other defendants with respect to the Receivership Property.

## DISPOSITION OF EXCESS FUNDS

29. Should the Receiver have funds in excess of the anticipated operating expenses and expenses and fees incurred pursuant to this Order, including an appropriate reserve in an amount to be approved by Fannie Mae, for the Receivership Property, the Receiver shall deliver to Fannie Mae all such funds upon demand by Fannie Mae and/or on a monthly basis. Any delay by Receiver in turning over such funds or by Fannie Mae in making any demand for such funds shall not affect Fannie Mae's right to such excess funds. All such funds shall be applied to the amounts owed to Fannie Mae by Borrower under the Loan Documents. At the end of the receivership, the Receiver shall turn over all such excess funds to Fannie Mae, including in the event the Borrower redeems the Receivership Property following a possible mortgage foreclosure sale. To the extent that there are any funds that exceed amounts due to Fannie Mae under the Loan Documents, such funds shall be subject to further order of the Court.

## BORROWING FROM FANNIE MAE

30.     Should the Receiver not have sufficient funds to pay all of the Operating Expenses for the Receivership Property, Fannie Mae may, in its sole discretion (without being under any obligation to do so except as to the Receiver's compensation and payment for professionals described herein) and subject to further order of this Court, advance its own funds to pay such Operating Expenses as Fannie Mae may elect to have paid.  The repayment of all such funds advanced by Fannie Mae shall be secured by the Receivership Property and under the Mortgage.  If such funds are advanced by Fannie Mae subsequent to any possible mortgage foreclosure sale, such amounts advanced may be added to Fannie Mae's credit bid as and to the extent permitted by applicable law.  In the event that the Receivership Property is insured under blanket policies maintained by the property manager of the Receivership Property, Borrower and the other defendants shall cooperate with the Receiver to obtain separate insurance for the Receivership Property.

## LIMITATION ON LIABILITY

31.     The Court finds that Fannie Mae in seeking to obtain a receiver is engaged in a workout activity, as that term is defined by M.C.L.A. § 324.20101a, and its actions in seeking appointment of a receiver are intended to protect the value and marketability of its collateral.  Further, Fannie Mae's actions in seeking the

appointment of a receiver do not amount to participation in management as that term is defined in CERCLA, 42 U.S.C. § 9601(a)(20).

32. Neither Fannie Mae nor the Receiver shall be liable for any claim, obligation, liability, action, cause of action, cost or expense of Borrower, any other defendant, or the Receivership Property arising out of or relating to events or circumstances occurring prior to this Order, including without limitation, any contingent or unliquidated obligations and any liability from the performance of services rendered by third parties on behalf of Borrower or any other defendant, and any liability to which Borrower or any other defendant is currently or may ultimately be exposed under any applicable laws pertaining to the ownership, use or operation of the Receivership Property and operation of Borrower's business (collectively all of the foregoing are referred to as "Pre-Receivership Liabilities"). Neither Fannie Mae nor the Receiver shall be obligated to advance any funds to pay any Pre-Receivership Liabilities. Notwithstanding the foregoing, with the prior written consent of Fannie Mae (but not otherwise except as provided in Section 23 above), the Receiver may pay from funds collected from operation of the Receivership Property Pre-Receivership Liabilities in the ordinary course of business and that are not payable to Borrower, any other defendant, or any defendant's insiders, affiliates, partners, related companies, parent companies, owners or those entities with common ownership and/or control. Neither service providers nor utility providers

shall interrupt service due to Pre-Receivership Liabilities. All public utilities shall continue to provide utility services to the Receiver and Property without a prior cash deposit, and with the cost of any such utility services required following the Receiver taking possession of the Property to be a cost of administration herein and entitled to an appropriate priority of payment, and until further order of this Court, all public utilities are hereby restrained and enjoined from terminating any utility services to the Property. The utility providers shall give the Receiver access to all accounts servicing the Property including online access to accounts and records of historical consumption and billing. The utility providers will also change the billing address for all accounts servicing the Property to the Receiver's business address: 31550 Northwestern Hwy., Suite 220, Farmington Hills, Michigan 48334. No service nor utility providers shall be allowed to transfer to this receivership any outstanding amounts due from other receiverships or property managed by or associated with M. Shapiro Real Estate Group. Receiver shall not have any obligation for filing income tax returns for Borrower. However, upon written request, Receiver shall provide Borrower with information necessary to complete their tax returns related to the operations of the Receivership Property, to the extent in Receiver's control. Receiver may not be named party to litigation related in any manner to the Receivership Property unless there is a Court order permitting such suit.

## BOND

33.    The Receiver shall post a surety bond in an amount of not less than $10,000.00, and that the cost of the Receiver's Bond and any renewals or extensions thereof shall not be an expense of the Receivership Property paid from Receivership Property funds.

34.    The cost of the Receiver Bond and any renewals or extensions thereof shall not be an expense of the Receivership Estate paid from Property Funds

## REPORTS BY RECEIVER

35.    The Receiver shall submit to this Court for its *in-camera* inspection and serve on the parties who have filed appearances through their counsel by email a monthly report that accounts for all receipts and disbursements concerning the performance of its duties under this Order.

36.    The Receiver may resign upon thirty days' written notice or sooner upon a motion for cause or in the event that Fannie Mae sells the note or interest in the Receivership Property.  The Receiver may be removed from duties under this Order upon a motion for cause.  If the Receiver is removed or resigns, the Receiver shall turn over to Fannie Mae or its designee all of the Receivership Property unless otherwise ordered by the Court.

37. The Receiver shall submit a final accounting for approval by the Court within sixty (60) days after the termination of the receivership or the Receiver's removal or resignation.

38. Upon the Court's approval of the Receiver's final accounting, the Receiver shall be discharged and the Receiver's bond cancelled.

39. The Receiver and its employees, agents and attorneys shall have no liability in connection with any liabilities, liens or amounts owed to any of Borrower or other defendants' creditors because of its duties as receiver. Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely in accordance with Michigan law.

40. The Receiver and its employees, agents, and attorneys shall have no liability for any claim asserted against them relating to the Receiver's duties under this Order, except for claims due to acts committed in bad faith, their gross negligence, gross or willful misconduct, malicious acts and/or the failure to comply with this Court's orders. Mark S. Kassab of M. Shapiro Real Estate Group is afforded all rights and defenses as provided in MCL § 554.1057 *et seq*. and MCL § 554.1011 *et seq*., including § 554.1028.

41. The Receiver is authorized, in its discretion, to operate the Receivership Property under any and all existing agreements that are currently in place between Borrower, any other defendant, and any third party, as well as any of Borrower's or

other defendants' plans and specifications, cost estimates, reports, permits, licenses, certificates of occupancy, development rights, warranties, guaranties, telephone exchanges, and trademarks.

## TERMINATION OF RECEIVERSHIP

42. This Court shall retain jurisdiction over this action, the Receivership Property, and the parties for the purpose of giving such other relief upon proper showing as is consistent with this Order and substantial justice.

43. Unless otherwise ordered by this Court, the receivership shall terminate with respect to any of the Receivership Property upon the earliest of: (a) sale of the Receivership Property, after approval by Fannie Mae and this Court; (b) the expiration of the applicable redemption period following foreclosure of the Receivership Property; or (c) the payment of the redemption amount for the Receivership Property to Fannie Mae in accordance with Michigan law. The Receiver may, from time to time, upon notice to all parties who have appeared in this action, apply to this Court for further and other instructions and for further powers necessary to enable the Receiver to fulfill its duties under this Order.

44. Until further Order of this Court or until Borrower's or any other defendant's interest in the Receivership Property is extinguished through foreclosure and Fannie Mae's subsequent possession of the Receivership Property, Borrower, the other defendants, their partners, agents and employees, and all other persons with

notice of this Order (other than the Receiver), are restrained and enjoined from directly or indirectly transferring, encumbering, removing, expending, distributing, concealing, destroying, mutilating, damaging, erasing, altering, disposing of or otherwise diminishing or causing harm to any of the Receivership Property, or any part of the Receivership Property. No security is required prior to issuance of this injunction.

45. Nothing contained in this Order shall be construed to transfer title of any of the Receivership Property to the Receiver.

46. The Receiver shall faithfully discharge all of its duties under this Order and shall obey all orders of this Court. The Receiver shall be deemed a fiduciary for the benefit of all persons having or claiming an interest in the Receivership Property, including Borrower and the other defendants.

47. The Receiver's actions at all times shall be commercially reasonable, and the Receiver is subject to the personal jurisdiction of this Court.

48. The Receiver's duty to act in its capacity is subject to the written acceptance of the receivership. Upon acceptance, the Receiver shall be bound by the terms of this Order and all obligations imposed hereby.

49. This Order may be amended for cause, either upon the stipulation of the Receiver and the parties, or for cause, after a motion and hearing.

Dated: May 19, 2026

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge
